GRAHAM v. C. L. CHAPMAN CREAM SEPARATOR WORKS et al.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1911.)

1. TRUSTS (§ 234*)—RIGHT OF ACTION BY BENEFICIARY.

Where a trustee collects subscriptions to be paid to a manufacturing corporation, in consideration of its moving its plant, and pays them over after knowledge of the company's refusal to move its plant, he is personally liable to the subscribers.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 340–342; Dec. Dig. § 234.*]

2. CONTRACTS (§ 279*)—PERFORMANCE—TENDER OF PERFORMANCE—NECESSITY.

Where plaintiff collected and held subscriptions as a trustee, and contracted with a manufacturing company to pay a certain sum to it in consideration of its moving its plant, and thereafter the company avowed its absolute intention not to move its plant as agreed, it is not necessary for the trustee to tender the balance of the subscription agreed to be paid in order to entitle him to maintain an action for the recovery of the sum already paid.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1233–1248; Dec. Dig. § 279.*]

3. WITNESSES (§ 199*)—COMPETENCY—ATTORNEY.

In an action by plaintiff as trustee to recover the amount of subscription paid under an agreement whereby defendant was to move its manufacturing plant, brought after defendant's absolute refusal to move its plant because its claims against a third person had not been settled,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

the attorneys for such third person are competent to testify as to defendant's declared intention not to move its plant.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 749–751, 766, 767; Dec. Dig. § 199.*]

Robson, J., dissenting.

Appeal from Trial Term, Allegheny County.

Action by Frank H. Graham, as trustee, against the C. L. Chapman Cream Separator Works, impleaded with others. From a judgment against the defendant C. L. Chapman Cream Separator Works, it appeals. Affirmed.

The action was commenced on the 28th day of February, 1908, by the plaintiff, as trustee for certain subscribers who had subscribed to and paid to him the amount of their respective subscriptions to a fund of $1,500, which it was agreed should be paid by the plaintiff to the defendant upon the agreement on its part that it would remove its plant for the manufacture of cream separators from Erie, Pa., to the village of Friendship, N. Y. One thousand and fifty dollars of such subscriptions had been collected and paid over to the defendant by the plaintiff, when, as is claimed, the defendant broke its agreement, and declared its intention not to engage in the manufacture of separators in the village of Friendship. Thereupon the plaintiff refused to pay the balance of said $1,500, demanded the repayment by the defendant to him of the $1,050, which was refused, and thereupon brought this action. The action as originally brought included as defendants the president and treasurer of the defendant as such and the Drake Hardware Company. At the close of the plaintiff's case, a nonsuit was granted as to each of said defendants, and the case proceeded solely against the appellant herein.

Argued before McLENNAN, P. J., and WILLIAMS, KRUSE, and ROBSON, JJ.

A. B. Ottaway, for appellant.
Joseph F. Rice, for respondent.

McLENNAN, P. J. The defendant is a foreign corporation, organized under the laws of Pennsylvania, and at all the times herein mentioned had a manufacturing plant and was engaged in the manufacture of cream separators in the city of Erie, in said state of Pennsylvania, and C. L. Chapman was president and treasurer of such corporation. In the early part of the year 1907 negotiations were commenced between the president and treasurer of the defendant and certain residents of the village of Friendship looking to the removal of defendant's manufacturing plant from the city of Erie to the village of Friendship, and as a result the residents of such village were given to understand that such removal would be made if they would raise $1,500 as a bonus and cause the same to be paid to the defendant. As a result of such negotiations and understanding, a subscription paper or agreement was prepared which was signed by a large number of residents and citizens of Friendship; the amount of their subscriptions aggregating said sum of $1,500. Said subscription agreement recited that:

"Whereas, the said company (the defendant), as a condition precedent to the payment of said bonus, will enter into a contract with the trustee (the plaintiff) for the subscribers hereto, whereby said company will covenant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and agree, among other things, that: (1) They will procure forthwith a suitable site, and, as soon as practicable, erect thereon a building and equip the same with the machinery necessary for the manufacture of cream separators; said plant to be ready for use by April 1, 1908. (2) As soon as said plant is ready for occupancy and use, they will commence the manufacture of separators, and for and during the five years next ensuing they will employ in and about said factory an average of not less than twenty-five men per day, during at least three hundred days in each year. (3) In the event of their failure to comply with the provisions of said contract, they will repay to the subscribers, or to their trustee, the said fifteen hundred dollars upon demand after such forfeiture. (4) That the trustee for the subscribers shall have a first lien upon the plant and property of the said company to secure such repayment of the bonus money in event of forfeiture: Now, therefore, for the purpose of inducing the said C. L. Chapman Cream Separator Company to locate in Friendship, upon the conditions above set forth, I, the undersigned, do hereby subscribe the sum set opposite my name below and promise to pay the same, within fifteen days from date thereof, to Frank H. Graham, as trustee, for the subscribers hereto, and I expressly authorize and direct the said trustee to pay the amount of such subscription to the said C. L. Chapman Separator Company upon the execution and delivery by them of a duly authorized and executed contract which shall include among its provisions substantially the covenants above set forth."

This subscription agreement was dated on the 19th day of August, 1907, and, as before said, was signed by a large number of citizens of Friendship; their entire subscription aggregating $1,500. Thereafter, and on the 24th day of August, 1907, an agreement was made by and between Frank H. Graham, as trustee for the subscribers above referred to, as party of the first part, and the defendant, as party of the second part, which, after referring to the provisions of the subscription agreement, provided:

"The party of the first part (the trustee) shall pay to the party of the second part, on or before the 15th day of September, 1907, the sum of $1,500 as the bonus hereby agreed upon to be paid to secure the removal of the factory and plant of the party of the second part from the city of Erie, Pennsylvania, to the village of Friendship, N. Y. The payment of the said fifteen hundred dollars shall be contingent upon the same having been paid to the trustee by the subscribers to said agreement, but the party of the first part hereby agrees to collect said amount if possible with due diligence on or before said date. The party of the first part further agrees to put in process of collection any unpaid subscriptions on said date. (2) The party of the second part hereby agrees to procure herewith a suitable site, and, as soon as practicable, erect thereon a building and equip the same with the necessary machinery for the manufacture of cream separators; and said plant to be ready for use by April 1, 1908. (3) As soon as said plant is ready for occupancy and use, the party of the second part will commence the manufacture of cream separators and for and during the five years next ensuing it will employ in and about said factory an average of not less than twenty-five persons per day during at least 300 days in each year. (4) In the event of the failure of the party of the second part to comply with the provisions of this contract, it will repay to the subscribers or the trustee the sum of fifteen hundred dollars upon demand for such failure and forfeiture. (5) The party of the first part as trustee for the subscribers to said agreement of August 19, 1907, shall have a first lien upon the plant and property of the second party to secure the repayment of the said sum of fifteen hundred dollars in the event that the party of the second part shall fail to perform the terms of this agreement."

It appears, and is uncontradicted, that on or about the 30th day of January, 1907, the defendant entered into an agreement with B. Frank

Drake and L. S. Howard of Friendship, N. Y., wherein among other things it was agreed:

"(8th) That should said parties of the third part (Drake and Howard) desire that this company and works (the C. L. Chapman Separator Works of Erie, Pa.) be moved to Friendship, N. Y., it is agreed that upon their (Drake and Howard) taking eight thousand dollars of the treasury stock at par or dictating its sale, the said works shall be moved to said city (Friendship, N. Y.) but this option shall only remain in force until July 1st, 1908."

The $8,000 above mentioned was paid in the month of December, 1907. This contract was transferred by Drake & Howard to the Drake Hardware Company, a domestic corporation, having its principal office and place of business at Friendship, N. Y. On the 22d day of August, 1907, two days before the contract was entered into by the plaintiff as trustee and the defendant, the defendant entered into an agreement with the Drake Hardware Company, the successor of Drake & Howard, aforesaid, wherein the option on the part of Drake & Howard to have the plant and works of the defendant moved from the city of Erie, Pa., to the village of Friendship was declared, and, according to the terms of that agreement, this defendant was then under contract to move its plant and business from Erie to Friendship. So that at the time the defendant entered into an agreement, to wit, the 24th day of August, 1907, to move its plant from Erie to Friendship, it was under a binding contract to do exactly that thing. On the 23d day of August, 1907, the defendant entered into an agreement with one P. P. Story of Belmont, N. Y., for the construction of the building to be put up by them in the village of Friendship, and the defendant was then under contract to move its plant and works from Erie to Friendship, independent of the contract which it had made with the plaintiff. The building mentioned in plaintiff's Exhibit A was completed and ready for occupancy about December 1, 1907, but attention is especially called to the fact that, before the defendant had entered into the contract with the plaintiff trustee, it had obligated itself to move its plant to Friendship, and had entered into a contract for the erection of the building in which the manufacture of cream separators was to be carried on. So far as appears, the plaintiff trustee and the subscribers to the subscription agreement did not know that their subscriptions were entirely unnecessary to bring about the desired result, to wit, the location of defendant's plant in the village of Friendship, because of the fact that the defendant had already obligated itself to so locate its plant. But, notwithstanding, the plaintiff as trustee went on and collected the subscriptions to the amount of $1,000, and on October 4, 1907, paid by his check to the defendant that sum, and one of the signers, the Empire Sash & Door Company, on August 19, 1907, paid its subscription of $50 direct to the defendant, making a total of $1,050 paid. It also appears that the Drake Hardware Company subscribed $150, and, when the plaintiff trustee went to it to collect such amount, it refused to pay and asserted that the defendant was indebted to it for more than that amount. After the $1,050 had been paid, as aforesaid, and after the building in which the manufacture of cream separators was to be carried on had been completed and everything was apparently

ready to commence operations, and after the plaintiff trustee had collected an additional $175 from the subscribers, which he had on hand, it was learned, and the referee finds, that the defendant declared in unequivocal language that it would not move its manufacturing plant to Friendship, unless the Drake Hardware Company paid to it upwards of $5,700, which it was claimed was owing to it from the Drake Company.  No suggestion was made that it had refused to transfer its plant from Erie to Friendship because $450 of the amount subscribed and being the balance of the $1,500 had not been paid to it, but the president of the defendant stated positively and unequivocally that he would not transfer his plant, unless the account against the Drake Company was paid.  Plaintiff trustee had no power or authority to adjust such account, had no power or authority to compel its payment, and so he notified the defendant that they not having moved their plant to Friendship upon the completion of the building as agreed, and it having come to his knowledge that they did not intend to so move it unless the Drake Company's account was paid, he would not pay as trustee to them any more of the moneys subscribed, and he demanded from them a return of the moneys which had already been paid to them.  Such demand was refused and this action was commenced.

The substance of the findings of the referee is that the plaintiff, as trustee, and the subscribers which he represented, were ready at all times to carry out the provisions of the contract which they had entered into, but that upon learning that the defendant had absolutely refused to move its plant unless a satisfactory settlement could be made with one of its creditors, whom it claimed owed it $5,700, it, under no circumstances, would come to Friendship with its plant, the trustee decided that he would put no more money of his cestui que trustent into that enterprise, and that he would seek to recover from them the amount already paid.  It would hardly seem necessary to go over the authorities cited by either counsel in their briefs.  There is no new or novel proposition of law involved.  True, the plaintiff trustee agreed that, if he could collect the subscriptions, to pay on or before the 15th of September, but the $1,050 was accepted on the 4th of October, and after that the defendant made repeated calls for the balance of the subscriptions.  Under those circumstances, there is no ground for the suggestion that the plaintiff became absolutely bound to pay because of his failure to pay at the date specified, and was therefore in default.  After it came to the knowledge of the plaintiff that the defendant would not come to Friendship with its plant, unless the Drake Company paid its bill in full, the plaintiff declined to pay any further moneys to the defendant which he had collected upon such subscriptions, and refused to attempt to collect any more of such subscriptions.

The learned referee has found (Finding 8):

"That after the said $1,050 had been paid to the defendant company, and after such building was ready for occupancy and use by the defendant company, disputes and disagreements arose between the defendant company and the Drake Hardware Company growing out of an attempted adjustment of their dealings, but over matters not involved in this litigation.  And the defendant asserted and insisted in the months of December, 1907, and January, 1908, that its plant, business, and machinery would not be removed

to Friendship aforesaid until the said Drake Hardware Company paid to the defendant company the sum it claimed the said Drake Hardware Company was owing to the defendant, and which, as the defendant claimed, amounted to about the sum of $5,700, and the payment of said sum by the Drake Hardware Company to it was then, to wit, in the month of January, 1908, insisted upon and demanded by the defendant company as a condition of its removal of its plant, business, and machinery to Friendship aforesaid; and the said defendant wholly refused to perform its agreements so made with plaintiff for the removal of its plant, business, and machinery to Friendship aforesaid and the establishment of such manufacturing business and plant at Friendship aforesaid pursuant to its said agreement, except that said sum of $5,700 was paid to the said defendant company by the Drake Hardware Company."

[1] Upon such finding, which is amply supported by the evidence—hardly contradicted—how can it be said that the plaintiff was authorized or would even have been justified in paying the balance subscribed by the subscribers for whom he was trustee? If he had paid the balance of such subscriptions, he would have been personally liable for such payment. The defendant has never offered to occupy the building in Friendship and to manufacture separators therein, as it agreed to do upon the completion of such building, and it is idle to say that their neglect or refusal in that regard was due to the plaintiff's failure to pay to it $450 from which, if we deduct $150 of subscription made by the Drake Company, which it claimed the defendant owed to it, there only remained $300 of such subscription unpaid. In this case, if the record is studied, we discover, first, that, when the contract was made with the defendant to locate its plant and business in Friendship upon receiving a bonus of $1,500, it had already entered into a binding contract which obligated it to do that very thing, and had entered into a contract for the erection of its building, both contracts being made and entered into before it entered into contract with the plaintiff.

[2] But, aside from that, it is a well-settled principle that:

"Where a party to a contract avows his intention not to comply with the agreement, it is not necessary for the other party to make a tender of performance in order to place him in default." Davis v. True, 89 App. Div. 319, 85 N. Y. Supp. 843; De Long v. Couch, 32 App. Div. 625, 52 N. Y. Supp. 1018.

In other words, it was not necessary that the plaintiff should tender the balance of the $1,500 in order to entitle him to maintain this action.

The facts are very fully found by the learned referee. They are all, I think, amply supported by the evidence, and it is unnecessary further to discuss them. From such findings of fact the referee's conclusions of law necessarily follow.

[3] The appellant urges that Rice and Wellman, who were attorneys and were engaged in seeking to compromise the differences between the defendant and the Drake Hardware Company, were not competent to testify as to the declared intention of the defendant not to remove its plant to the village of Friendship, unless its alleged account against the Drake Hardware Company was paid. Such witnesses in no sense represented the plaintiff and were charged with no duty in respect to this litigation, and we think there is no rule of law which would prevent them from stating the facts which they learned

in respect to the issues involved in this litigation. Such witnesses were in conference with the defendant in respect to the adjustment of the contract which it had entered into with the Drake Hardware Company, and in no way represented any party to this litigation so far as the contract here is involved.

It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except ROBSON, J., who dissents.